DECISION
{¶ 1} Relator, Thomas Bray, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his application for permanent total disability compensation, and to enter an order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In his objections, relator argues that the commission abused its discretion in relying on the report of Dr. Lutz, who failed to adequately address relator's pain and its impact on his ability to engage in sustained remunerative employment. Contrary to relator's argument, Dr. Lutz did discuss relator's pain and found a ten percent whole person impairment for his ongoing neurogenic pain; nonetheless, Dr. Lutz determined that he was still capable of performing light work. In essence, relator simply disagrees with the interpretation of the evidence by the commission and is repeating the same arguments that were fully considered and rejected by the magistrate. The report of Dr. Lutz is some evidence to support the decision of the commission.
 {¶ 4} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled,
writ of mandamus denied.
KLATT and WATSON, JJ., concur.
 DECISION IN MANDAMUS {¶ 5} In this original action, relator, Thomas Bray, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 6} 1. On December 21, 1996, relator sustained an industrial injury while employed as a police officer for respondent Hamilton County Sheriff's Office. On that date, relator was seriously injured when his police cruiser collided with a truck. The industrial claim is allowed for: "open wound ocular adnex, left; open wound of jaw; spleen parenchyma laceration; traumatic pneumohemothorax-open; diaphragm injury-closed; flail chest, left; nerveroot plexus disorders; fracture rib, closed, left," and is assigned claim number 96-564721.
 {¶ 7} 2. After a six-month recovery period, relator returned to work at the Hamilton County Sheriff's Office in June 1997. However, relator quit working in August 1999.
 {¶ 8} 3. Relator sustained two additional industrial injuries following his motor vehicle accident of December 21, 1996. His September 4, 1998 injury is allowed for: "sprain of right ribs." His February 13, 1999 injury is allowed for: "open wound of left great toe."
 {¶ 9} 4. On July 9, 2001, relator filed an application for PTD compensation. In support, relator submitted a report, dated October 16, 2000, from Martin Fritzhand, M.D., who examined only for the December 21, 1996 injury. Dr. Fritzhand's report states:
 {¶ 10} "In summary, this is a very unfortunate middle-aged man who sustained extensive chest and abdominal injuries in December 1996. The patient has had chronic, incapacitating chest wall pain since then, and remains on medical retirement as a police officer. The patient has been found to have severe intercostals neuralgia due to the chest wall injuries described above. The pain from these injuries is debilitating, and the patient leads a very sedentary lifestyle. Activity only serves to worsen his chest discomfort, and the patient remains inactive throughout his day. His quality of life has markedly suffered due to the injuries described above. In addition, the patient does have intermittent gastrointestinal distress. It is my medical opinion that the patient is in [sic] impaired in body as to render him unfit for any substantial remunerative employment. It is with reasonable medical probability that his impairment will continue for an indefinite period of time without any present indication of recovery. Thus, based on the causal relationship between the diagnosed conditions and the history of injuries described above, it is my medical opinion that the patient is permanently and totally disabled at this time. Based on the claimant's age, education, prior work experience and the combination of all allowed conditions in this claim, it is my medical opinion that he would be unable to maintain employment. His tolerance for standing, walking, stooping, bending, lifting, sitting and traveling is poor. The patient does appear to have a severe functional impairment. * * *"
 {¶ 11} 5. On February 15, 2001, relator was examined by orthopedic surgeon John W. Wolf, Jr., M.D., on behalf of the employer. Dr. Wolf reported:
 {¶ 12} "IMPRESSION: [a]. Chronic left thoracic wall pain secondary to nonumion of multiple left rib fractures.
 {¶ 13} "[b]. Chronic intercostals neuralgia secondary to multiple left rib fractures.
 {¶ 14} "DISCUSSION: The patient has chronic disabling pain as a direct result of his work-related injury. It is my professional opinion that he has reached maximum medical improvement. It is medically probable that his condition is permanent. His conditions require him to take medications for pain control which he finds rendered him less able to think and react rapidly. His pain, even on his medications, prevents him from rapid or repetitive motions. Even sleep is compromised by his medical condition. It is therefore my professional medical opinion that the claimant is totally impaired from any remunerative employment."
 {¶ 15} 6. On March 20, 2001, relator was examined by James T. Lutz, M.D., on the commission's behalf. Dr. Lutz is board certified in occupational medicine. Dr. Lutz examined for all three industrial injures and reported:
 {¶ 16} "CHIEF COMPLAINTS: Pain and spasm of the left side of chest, and extra precautions with respiratory infections.
 {¶ 17} "HISTORY OF PRESENT ILLNESS: Thomas Bray is a 38-year-old male who sustained the three industrial injuries * * * while working as a patrol officer. On 12/21/96 the claimant was responding to an emergency call when his police cruiser was struck broadside in the driver's door by a truck. The claimant required trauma bay resuscitation at a local hospital and placement of a left chest tube. He underwent an exploratory laparotomy and splenectomy due to the injury. On 9/4/98 the claimant was involved in restraining someone who was resisting arrest and pulled a muscle in the left side of his chest. The claimant required no diagnostic studies or surgical interventions related to this injury. Please note that this claim is stated for sprain of right ribs, however, the claimant insists that this injury was to his left ribs, and states that in fact this was merely an exacerbation of his 1996 injury described above. On 2/13/99 the claimant was getting road flares from his cruiser, when he dropped one with the spike puncturing his left great toe. The claimant required essentially only first aid for this injury. Currently the claimant is under the care of a pain management specialist, Dr. Richard Gregg for symptoms related to the left side of his chest. He sees Dr. Gregg approximately every five months, or as needed. His current medications include Neurontin, baclofen, Celebrex, Paxil, and Axid. His current symptoms include constant pain described as a burning sensation and tightness over the left side of the chest wall, with occasional radiation of pain around the chest anteriorly to the midline, and posteriorly to almost the midline. The claimant states that with repetitive type of physical activity, or exposure to vibration such as when driving his car for a prolonged period of time, his pain will become significantly much more severe producing the radiation of pain described above, as well as severe spasms of the left chest wall. The claimant denies any numbness or tingling. The claimant notes other aggravating factors include stretching activities, weather changes, and being over an hour late with his medications.
 {¶ 18} "* * *
 {¶ 19} "PHYSICAL EXAMINATION: * * * Examination of the left eye and surrounding structures revealed no sign of trauma, no scarring with the extraocular movement being intact. Examination of the jaw revealed no sign of trauma, and no scarring. There were no areas of tenderness around the left eye or jaw. Examination of the left abdomen and chest revealed a large vertical scar over the midline of the abdomen and even into the lower chest running from the nipple line to the groin. The abdominal musculature was well-maintained with no evidence of ventral hernia. The abdomen was completely nontender to palpation. Examination of the chest wall revealed no structural deformities, and no asymmetries. There was a scar from chest tube placement in the midrib area at the left midaxillary line with significant tenderness running from this area inferiorly to the lower edge of the ribs. The claimant experienced no discomfort upon deep inspiration, and movement of the arms was complete and full with no complaint of pain or discomfort. Gross sensation of the entire chest wall was intact. Examination of the left great toe was completely normal with no sign of trauma, no areas of tenderness, and full range of motion, and excellent strength.
 {¶ 20} "DISCUSSION: Thomas Bray sustained the three industrial injuries * * * while working as a police officer. Note is made that claim number 98-516513 for sprain of ribs has been incorrectly described as the right side, as the claimant insists, and the history of the file indicates that this injury also involved the claimant's left ribs. He underwent a single surgical procedure described above related to the 1996 injury, with removal of his spleen, and has significant residual effects in the form of chronic pain and spasms involving the left chest wall.
 {¶ 21} "ANSWERS TO SPECIFIC QUESTIONS:
 {¶ 22} "* * * In my medical opinion, this claimant has reached maximum medical improvement with regard to each of the specified allowed condition[s] of three industrial injuries above. In my opinion, no fundamental, functional or physiologic change can be expected despite continued treatment and/or rehabilitation.
 {¶ 23} "* * * Reference is made to the Fourth Edition of the AMA Guides Revised in arriving at the following impairment assessment. For open wound ocular adnex NEC, left and open wound of jaw: The claimant warrants a 0% impairment. For spleen parenchyma laceration with subsequent splenectomy, with reference to section 7.4, it is my opinion that the claimant warrants a 4% whole person impairment. For all other allowances related to the chest including traumatic pneumothorax-open, diaphragm injury-closed, flailed chest, left, nerve root plexus disorders, fracture rib-closed, left and sprain of ribs from the 1998 injury, it is my opinion that the claimant warrants a 10% whole person impairment for his ongoing neurogenic pain. For open wound of the left great toe: The claimant warrants a 0% impairment. Combining 10+4 the claimant warrants a 14% whole person impairment."
 {¶ 24} 7. Dr. Lutz also completed a "physical strength rating" form on which he indicated that relator is capable of "light work" as defined by the commission's rules.
 {¶ 25} 8. The commission requested an employability assessment report from Bill Braunig, a vocational expert. Braunig's report, dated April 18, 2001, lists "employment options" based upon Dr. Lutz's reports.
 {¶ 26} 9. Following a December 14, 2000 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states in part:
 {¶ 27} "* * * This order is based upon the reports of Dr. Lutz and Mr. Braunig.
 {¶ 28} "* * * The medical evidence on file does not assign impairment or disability to the conditions that are allowed in any of the claims other than claim number 96-564721. The date of injury for this claim is 12/21/96. At that time the claimant was employed as a police officer. He was injured when the police cruiser in which he was riding was struck by a truck. The claimant sustained extensive injuries as a result of this accident. The claimant, however, recovered sufficiently to return to work in June of 1997. Claimant returned to work at full duty and worked until 08/30/99. Claimant testified at the hearing that he had continued pain symptoms which prevent him from returning to work. Claimant has not worked since 08/30/99. Claimant has not been involved in any sort of rehabilitation program.
 {¶ 29} "Dr. James Lutz, occupational medicine, examined the claimant on 03/20/01 at the request of the Industrial Commission. The claimant advised Dr. Lutz that he has constant burning pain and tightness over the left side of the chest wall with occasional radiation obtained around the chest anteriorly and posteriorly to the midline. The claimant further advised that with repetitive physical activity or exposure to vibration the pain will increase and he will have spasms. The claimant also told Dr. Lutz that he is currently a stay at home father and that he performs much of the typical housework such as laundry and routine cleaning. Dr. Lutz advised that the claimant has reached maximum medial improvement. On the physical strength rating form that is attached to his report, Dr. Lutz indicated that the claimant would be capable of light work. Light work is defined as exerting up to twenty pounds of force occasionally, up to ten pounds of force frequently and/or a negligible amount of force constantly to move objects. Light work is further defined as requiring walking or standing to a significant degree; or requiring sitting most of the time, but entailing pushing and/or pulling of arm or leg controls; and/or requiring working at a production rate pace entailing the constant pushing and/or pulling of materials even [though the] weight of those materials is negligible.
 {¶ 30} "The Staff Hearing Officer finds that the claimant's condition has reached maximum medical improvement and that the industrial injury prevents the claimant from returning to work at his former position of employment. The Staff Hearing Officer further finds, based upon the report of Dr. Lutz, that the claimant retains the physical functional capacity to perform employment activities which are sedentary to light in nature."
 {¶ 31} 10. The remainder of the SHO's order of July 9, 2001, addresses the Braunig employability assessment report and analyzes the non-medical factors.
 {¶ 32} 11. On August 27, 2002, relator, Thomas Bray, filed this mandamus action.
Conclusions of Law:
 {¶ 33} The main issue is whether the report of Dr. Lutz, upon which the commission exclusively relied to support its determination that relator's residual medical capacity is at sedentary to light exertional levels, shows that the pain associated with the industrial injury was appropriately considered by the commission in adjudicating the PTD application.
 {¶ 34} Finding that Dr. Lutz's report does show that the pain associated with the industrial injury was appropriately considered, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 35} Two cases, State ex rel. Paraskevopoulos v. Indus. Comm. (1998), 83 Ohio St.3d 189, and State ex rel. Unger v. Indus. Comm. (1994), 70 Ohio St.3d 672, neither of which are cited by the parties to this action, suggest that the commission can abuse its discretion by failing to factor pain into the adjudication of a PTD application.
 {¶ 36} In Unger, the court upheld the commission's denial of the PTD application, stating:
 {¶ 37} "* * * The three physicians' reports on which the commission relied all acknowledged claimant's complaints of pain. Thus, pain was factored into the overall analysis of permanent total disability. * * *" Id. at 676.
 {¶ 38} However, the pertinent portions of the three physicians' reports acknowledging the claimant's complaints of pain were not reproduced in the court's opinion. Thus, we do not know the extent to which the claimant's complaints of pain were acknowledged in those physicians' reports. We only know that the physicians did acknowledge the claimant's pain complaints in their reports. We are also not told the allowed conditions of the claim by the Unger court.
 {¶ 39} In Paraskevopoulos, the court also upheld the commission's denial of the PTD application. The Paraskevopoulos court states:
 {¶ 40} "* * * For the most part, the parties do not dispute claimant's medical ability to perform sustained remunerative employment. While claimant does assert that the commission abused its discretion in failing to expressly factor pain into its medical analysis, his argument is negated by State ex rel. Unger v. Indus. Comm. (1994),70 Ohio St.3d 672, * * * which held that the factor of pain was sufficiently considered when the complaints about the pain were acknowledged in the medical evidence on which the commission relied. Because the relied-upon evidence made such an acknowledgement in this case, claimant's proposition lacks merit." Id. at 191.
 {¶ 41} The Paraskevopoulos court notes that the claimant underwent a 19-day course of treatment at the Jewish Hospital of Cincinnati Pain Center. The court also notes that one of the allowed conditions is "chronic pain syndrome with chronic myofascial strains to the cervical, thoracic and lumbar regions." Id. at 189.
 {¶ 42} In Paraskevopoulos, the commission exclusively relied upon the report of Dr. Hanington to support its determination that the claimant is medically able to perform light and sedentary employment. We only know what Dr. Hanington's reports state from the commission's order which was quoted by the Paraskevopoulos court. The commission's order, quoted by the court, states in part:
 {¶ 43} "`The claimant was examined by Dr. Hanington at the request of the Industrial Commission. Dr. Hanington opined that the industrial injury does prevent the claimant from returning to his former position of employment. He further opined that the claimant should avoid activities that involve repetitive bending, stooping, lifting, squatting, or carrying objects weighing more than 20 pounds. Dr. Hanington further opined that the claimant should have no difficulty with the use of his upper extremities nor any difficulty with walking, sitting or standing, as long as the latter two were not required constantly throughout the work day.
 {¶ 44} "`The Staff Hearing Officers find that the claimant is unable to return to his former position of employment as a result of the industrial injury. The Staff Hearing Officers further find that the claimant is capable of performing light and sedentary employment within the restrictions as set forth in the medical report of Dr. Hanington.' "
 {¶ 45} The above two cases are instructive here because they do suggest, as previously noted, that the commission can abuse its discretion by failing to factor pain into its PTD determination, at least where the record warrants such factoring.
 {¶ 46} Here, given that the record shows that ongoing pain has been a significant factor associated with the industrial injury and that relator has claimed that he is debilitated by the ongoing pain, the magistrate concludes that the commission did have a duty to factor or consider relator's pain in its adjudication of his PTD application. Moreover, the commission's factoring of the pain must be evident from the commission's order itself or from the evidence relied upon by the commission.
 {¶ 47} Here, the commission's factoring of the pain is most evident in Dr. Lutz's report. Dr. Lutz initially notes under "chief complaints" that pain is a factor.
 {¶ 48} Under the "history," Dr. Lutz acknowledges that "[c]urrently the claimant is under the care of a pain management specialist, Dr. Richard Gregg for symptoms related to the left side of the chest." Dr. Lutz lists the current medications. He then describes the pain as a "constant pain described as a burning sensation and tightness over the left side of the chest wall, with occasional radiation of pain around the chest anteriorly to the midline, and posteriorly to almost the midline." He further details how the pain can become significantly more severe with repetitive type of physical activity or exposure to vibration.
 {¶ 49} Dr. Lutz's reporting of his physical examination also addresses the pain response or lack thereof. Dr. Lutz reports "[t]he abdomen was completely nontender to palpation." Dr. Lutz further wrote "[t]he claimant experienced no discomfort upon deep inspiration, and movement of the arms was complete and full with no complaint of pain or discomfort."
 {¶ 50} In his concluding paragraph, Dr. Lutz assigned a ten percent whole person impairment for relator's "ongoing neurogenic pain."
 {¶ 51} Without attempting to second-guess Dr. Lutz's medical expertise or his medical judgment, see State ex rel. Young v. Indus. Comm. (1997), 79 Ohio St.3d 484, 487, the magistrate observes that Dr. Lutz clearly indicates in his report that he fully considered relator's pain complaints and the history of relator's pain management. The report clearly indicates that Dr. Lutz examined for the pain complaints and, most notably, Dr. Lutz assigned a ten percent whole person impairment for the "ongoing neurogenic pain."
 {¶ 52} Clearly, whatever duty the commission had to consider the ongoing pain associated with the industrial injury was met by the commission's reliance upon Dr. Lutz's report. Paraskevopoulos; Unger, supra.
 {¶ 53} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.